# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JOHN ROBINSON, | : | |
| Plaintiff, | : | |
| | | Case No. 3:06CV360 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.   INTRODUCTION

When health problems prevent a person from performing his or her job, the Social Security Administration potentially provides financial assistance in the form of Disability Insurance Benefits (DIB). *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The potential for DIB assistance has gone unrealized for Plaintiff John Robinson, a former parking lot attendant, inspector, cook, and janitor. (Doc. #10 at 2).

Robinson applied for DIB but did not convince the Social Security Administration that he suffered from a "disability" – a term of specialized and narrow meaning under the Social Security Act. *See Bowen*, 476 U.S. at 70. The Social Security Administration's

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

non-disability determination was based on the written decision of Administrative Law Judge (ALJ) Melvin A. Padilla.  (Tr. 18-30).  ALJ Padilla's decision constituted a final administrative agency determination rendering it subject to judicial review, *see* 42 U.S.C. §405(g), which Robinson is now due in this case.

The parties' dispute over the ALJ's decision is presently pending on Robinson's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #11), the administrative record, and the record as a whole.  Robinson seeks an Order remanding, at a minimum, his case to the Social Security Administration to correct certain errors.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.     ADDITIONAL BACKGROUND

Many years before this case, in 1989, Robinson successfully applied for Supplemental Security Income (SSI).  (Doc. #10 at n.1).  Little information appears in the administrative record about Robinson's prior disability, although he informed a psychologist in 2003 that he had suffered from "paranoid schizophrenia."  (Tr. 121).  His prior disability was not permanent, as indicated by his return to work in 1997 and the resulting termination of his SSI benefits.  (Doc. #10 at n.1).

Robinson graduated from high school in 1964.  (Tr. 85).  He was fifty-seven years old at the time of the ALJ's decision.

As to his presently disputed disability, Robinson alleged in his DIB application that his impairments precluded him from work beginning on June 15, 2002.  His primary

claimed impairments are major depression, memory loss, insomnia, and post traumatic stress disorder. (Doc. #10 at 2-7 (and records cited therein); *see* Tr. 79). His physical impairments (headaches and ulcers) are not at issue in this case. (Tr. 79; *see* Doc. #10 at 11-15).

The parties have provided detailed and informative descriptions of Robinson's medical records and other pertinent evidence contained in the administrative record. *See* Doc. #10 at 1-10; Doc. #11 at 1-11. In light of this, and upon consideration of the complete record, there is no need to fully reiterate the parties' descriptions. Still, identifying four medical sources will help frame further review.

Robinson relies heavily on the information and opinions provided by his treating psychiatrist, Dr. Yezuita, whose May 2005 opinions described many limitations and detailed Robinson's mental ability to perform work. (Tr. 224-26).

The Commissioner relies on the report of one-time examining psychologist Thomas O. Martin, Ph.D. In April 2003, Dr. Martin evaluated Robinson for the Ohio Bureau of Disability Determinations. At that time, Robinson was not receiving mental health treatment. Dr. Martin diagnosed "Major Depressive Disorder, Recurrent Type, of Moderate Severity, Alcohol Dependence, Crack/Cocaine Abuse, [and] Cognitive Disorder NOS [not otherwise specified]." (Tr. 125 (citations omitted)). Assessing Robinson's work limitations, Dr. Martin opined that Robinson's ability to relate to others, including coworkers and supervisors, was "at least moderately impaired because of the presence of his major depressive disorder." (Tr. 124). Dr. Martin did not think

Robinson's ability to follow instructions was impaired, but he noted that depression caused at least a moderate impairment in Robinson's ability to (1) withstand the pressures of daily work activity; and (2) to maintain attention, concentration, persistence, and pace to complete simple tasks. (Tr. 124-25).

The Commissioner also relies on two non-examining psychologists, Dr. Pawlarczyk and Dr. Melvin (each hold a Ph.D.). (Tr. 126-43). In May 2003, these psychologists reviewed and evaluated Robinson's records, and they concluded that his mental impairments did not restrict his abilities in most areas of work functioning. *See id*.

The Commissioner lastly relies on Craig D. Olson, Psy.D., who interviewed and evaluated Robinson on one occasion, in October 2003, for the Ohio Bureau of Disability Determinations. (Tr. 153-59). Dr. Olson diagnosed alcohol dependence in early partial remittance, cocaine abuse, and personality disorder not otherwise specified with narcissistic features. (Tr. 158). Dr. Olson further reported in part, "A Major Depressive Disorder with psychotic features, and paranoid schizophrenia could be listed as rule outs..." (Tr. 158). Dr. Olson assessed Robinson's work abilities, indicating, for example, that he was moderately impaired in his ability to relate to others but "could relate sufficiently to coworkers and supervisors for simple, repetitive to possibly detailed level tasks and procedures." (Tr. 158).

### III. ADMINISTRATIVE REVIEW

Narrowed to its statutory meaning, the term "disability" includes only physical or

4

mental impairments that are both "medically determinable" and severe enough to prevent a person from engaging in "substantial gainful activity." 42 U.S.C. § *see Bowen*, 476 U.S. at 469-70 .  A DIB applicant bears the ultimate burden of establishing that he or she is under a disability.[2]

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* Tr. 23-31; *see also* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step of the sequential evaluation terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

---

[2] *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

At Step 4 in the present case, ALJ Padilla assessed Robinson's Residual Functional Capacity as follows:

> The claimant is capable of performing the basic exertional requirements of work at any level of physical exertion, as such work is defined for Social Security purposes, if he is limited to low stress jobs, not dealing with the public, with no over-the-shoulder supervision, no teamwork, and minimal contacts with supervisors and co-workers. He is limited to simple tasks, not involving extended periods of concentration.

(Tr. 29). The RFC assessment led the ALJ to his finding at Step 4 that Robinson retained the ability to perform his past relevant work as a janitor. (Tr. 29). This dispositive finding led the ALJ to his ultimate conclusion that Robinson was not under a disability. (Tr. 28-30).

## IV.   JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds on two paths: First, whether substantial evidence in the administrative record supports the ALJ's factual findings; and second, whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...'" *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*.

*See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). The required review is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second path of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

V.     **DISCUSSION**

    A.     <u>**The Parties' Contentions**</u>

Robinson introduces his contention as follows:

> The administrative law judge erred in his finding concerning residual functional capacity since his evaluation of medical source opinions, including the opinion of the treating psychiatrist [Dr. Yezuita], is not supported legally or factually.

(Doc. #10 at 11).

The Commissioner contends that the ALJ properly rejected the opinions of Dr.

7

Yezuita because his limitations were inconsistent with other evidence of record, particularly the opinions of Drs. Martin, Pawlarczyk, Melvin, and Olson. (Doc. #11 at 13-18).

### B. Medical Source Opinions

The treating physician rule – when applicable – requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinions of a non-treating physician. *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §404.1527(d)(2), (f). The treating physician's opinion must have two characteristics before the treating physician rule applies: (1) it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) it must not be "inconsistent with other substantial evidence of record." 20 C.F.R. §404.1527(d)(2); *see Wilson*, 378 F.3d at 544.

If a treating physician's opinion is not given controlling weight, the ALJ must continue to weigh it under a number of factors set forth in the Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

As to other types of medical opinions, more weight is generally placed

on the opinions of an examining medical source rather than the opinions of a non-examining source. *See* 20 C.F.R. §404.1527(d)(1). However, the opinions of non-examining state agency medical sources have some value and can, under some circumstances, be given significant weight. *See* Social Security Ruling 96-6p. The Regulations specifically mandate ALJs to weigh the opinions of state agency medical sources by "using relevant factors," including supportability, consistency, and specialization. 20 C.F.R. §404.1572(d), (f)(2)(ii).

### C. <u>Analysis</u>

In May 2005, Dr. Yezuita indicated that Robinson had poor or no ability to relate to coworkers, to deal with the public, to deal with work stresses, or to maintain attention/concentration. He noted that Robinson had a "fair" (*i.e.*, "seriously limited, but not precluded") ability in the other types of occupational adjustments with the exception of his "good" (*i.e.*, "limited but satisfactory") ability to use judgment. (Tr. 224). Dr. Yezuita characterized Robinson's ability to make personal-social adjustments to include a "good" ability to maintain personal appearance, poor or no ability to relate predictably in social situations, "fair" ability to behave in an emotionally stable manner, and "fair" ability to demonstrate reliability. (Tr. 226). Dr. Yezuita explained:

> Mr. Robinson has demonstrated an ability to maintain personal hygiene & grooming. His problems start when he feels he is in view & hence under scrutiny. He has little problems in more private & individual activities, but when coupled with others [he] begins to have increased anxiety & in turn sets of bout of depression & self doubt. Therefore, he can go to work (i.e. get there) but cannot adjust to the needs of modifying his

9

>tolerances to the irregularities of it even in the more mundane & rote types of employment as it is unlikely he would adjust well to inevitable change.

(Tr. 226).

The ALJ declined to give Dr. Yezuita's opinions controlling weight because he believed Dr. Yezuita's opinions were inconsistent with the progress notes from Eastway Behavioral Healthcare. (Tr. 26). Assuming, in the Commissioner's favor, that the ALJ's identity of this inconsistency constituted a sufficient basis for declining to apply the treating physician rule to Dr. Yezuita's opinions, the ALJ erred as a matter of law by not continuing to weigh Dr. Yezuita's opinions under any of the remaining regulatory factors. As the Sixth Circuit Court of Appeals explains, "in all cases, there remains a presumption, albeit a rebuttable one, that the opinion of a treating source is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242. Listing one factor as the basis for not applying controlling weight to treating physician's opinions wholly fails this continued-weighing requirement, *see id.*; *see also Wilson*, 378 F.3d at 546-47, a conclusion further confirmed by the Commissioner's Ruling 96-2p, which instructs:

>Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported ... or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527.... In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188 at *4.

The Commissioner argues that certain information in the records from Eastway along with the opinions of two consulting sources, Drs. Martin and Olson, and two reviewing sources, Drs. Pawlarczyk and Melvin, directly contradicted Dr. Yezuita's opinions. The Commissioner thus concludes that those contradictory medical source opinions supported the ALJ's decision to reject Dr. Yezuita's opinions.

The Commissioner's contentions lack merit because the ALJ did not weigh the opinions of these non-treating medical sources under any regulatory factor. This constituted an error of law. *See* Although the ALJ separately described the opinions of the non-treating medical sources when discussing the medical evidence of record, *see* Tr. 20-24, the ALJ never weighed the non-treating sources' opinions under any factor listed in the Regulations. *See* Tr.20-27. The ALJ's decision was therefore contrary to the regulatory directive to ALJs to weigh non-treating medical source opinions using relevant factors," including supportability, consistency, and specialization. 20 C.F.R. §404.1572(d), (f)(2)(ii). The significance of this error of law is difficult to minimize not only due to the plain language of §404.1527(d) and (f), but also due to the Commissioner's specific instructions to ALJs. Speaking through Ruling 96-2p, the Commissioner emphasizes:

> The Regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

11

>      For this reason, the opinions of State agency medical and psychological consultants ... can be given weight only insofar as they are supported by evidence in the case record, considering such factors as ... supportability..., consistency..., and any explanation for the opinion provided by the State agency medical or psychological consultant....  The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

1996 WL 374188 at *4.

The ALJ's decision was also flawed due to his refusal to accept Robinson's post-traumatic stress disorder as a severe impairment.  On this point, the ALJ wrote, "There is no indication that these thoughts [relating back to an earlier assault] were intrusive to a point where they presented an impediment to his functioning."  (Tr. 24). The ALJ's finding directly conflicted with Dr. Yezuita's very specific description of the effects of post-traumatic stress disorder would have on Robinson's work abilities.  *See* 224-26.  In light of this, the ALJ's error of law in not weighing Dr. Yezuita's under the mandatory factors set forth in the Regulations also infected the ALJ's rejection of post-traumatic stress syndrome as a severe impairment.

The ALJ further concluded that, "The claimant's primary problem is his substance abuse, with his depression likely secondary to the substance abuse."  (Tr. 26).  No physician or psychologist of record has suggested this with regard to Robinson.  Another error consequently exists in the ALJ's reliance on his own lay conclusion about the extent Robinson's earlier substance abuse – which may not have been ongoing or current at the time he was medically evaluated – constituted a primary problem (with depression likely

secondary). "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see Meece v. Barnhart*, 2006 WL 2271336, *8 (6th Cir. 2006)("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2nd Cir. 1999).

There remains the possibility that the ALJ's errors of law were harmless. *See Wilson*, 378 F.3d at 546-47. If harmless, the errors do not require reversal and the ALJ's decision must be affirmed. *See Bass II*, 499 F.3d at 512. *De minimis* or irrelevant errors can be deemed harmless. *See id*; *see also Wilson*, 378 F.3d at 547. Harmless error is not shown simply because a favorable administrative decision (granting a claimant's DIB/SSI application) was unlikely. *Wilson*, 378 F.3d at 547.

The ALJ's errors were not harmless. Even a cursory review of Dr. Yezuita's report demonstrates that he provided many supporting reasons for his opinions. (Tr. 224-26). As a result, his opinions were "not so patently deficient" that they could not have been accepted. *See Wilson*, 378 F.3d at 547. In addition, a review of the various non-treating medical source opinions and other evidence of record does not reveal evidence that is so one-sided in the Commissioner's favor, that the ALJ's errors could be deemed harmless.

Accordingly, Robinson's challenges to the ALJ's decision are well taken.

## VI. REMAND

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of his disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Robinson, however, is entitled to an Order remanding this case to the Social Security Administration for further proceedings pursuant to sentence four of §405(g) due to the ALJ's failure to weigh the medical source opinions of record as required by the Regulations. On remand, the Commissioner and the ALJ should be directed to (1) re-evaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; (2) to explain the evaluation of the medical sources as required by the Regulations, Rulings, and case law; and (3) to determine anew whether Robinson is under a "disability" within the meaning of

14

the Social Security Act.

Accordingly, the case must be remanded to the Commissioner and the ALJ under sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff John Robinson is under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

January 17, 2008

s/ Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).